# Exhibit A



## INDIANA UNIVERSITY
### OFFICE OF THE VICE PRESIDENT
### AND GENERAL COUNSEL

February 13, 2026

Via EEOC Respondent Portal

Mr. Frederick Brubaker
Equal Employment Opportunity Commission
Frederick.brubaker@eeoc.gov

   Re: Tim Garl v. Indiana University
     Charge No. 24F-2025-00604

Dear Mr. Brubaker:

This letter is the statement of position of the Trustees of Indiana University (the "University" or "IU") and is being submitted to assist the Equal Employment Opportunity Commission ("EEOC") in its investigation of the Charge of Discrimination filed by Mr. Tim Garl ("Garl") on or around September 29, 2025 (the "Charge"). The University reserves the right to submit additional information relating to the Charge.[1]

In his Charge, Garl claims the University discriminated against him on the basis of his age; and that he was retaliated against. Because there is no factual or legal support for Garl's claims, the University requests the Charge be dismissed with a no-cause finding.

## I. Factual Background

### A. Indiana University's Policies Prohibiting Discrimination

The University is an equal opportunity employer. The University prohibits all forms of discrimination and treats all claims of discrimination with fairness and sensitivity. The University's prohibition of discrimination on the basis of age is specifically noted in the University's Affirmative Action and Equal Opportunity pledge. This pledge states:

> Indiana University pledges itself to continue its commitment to the achievement of equal opportunity within the University and throughout American society as a whole. In this regard, Indiana University will recruit, hire, promote, educate, and

---

[1] This position statement, while believed to be accurate, does not constitute an affidavit or binding statement of the University's legal position with regard to Garl's claims. This letter is also not intended to be used as evidence of any kind in any administrative hearing or court proceeding in connection with Garl's claims. Because additional facts likely would be uncovered through discovery or following a full investigation, the University does not waive its right to present new or additional information at a later date. Additionally, the University does not waive, and hereby preserves, any and all substantial and procedural defenses that may exist in response to Garl's claims. The University also requests that any efforts to contact its management be directed to the undersigned.



**INDIANA UNIVERSITY**

OFFICE OF THE VICE PRESIDENT
AND GENERAL COUNSEL

provide services to persons based upon their individual qualifications. Indiana University prohibits discrimination on the basis of age, color, disability, ethnicity, sex, gender identity, gender expression, genetic information, marital status, national origin, race, religion, sexual orientation, or veteran status.[2]

The University also prohibits retaliation against any employee who makes a report of discrimination, harassment, and/or sexual misconduct, forbidding them from being subjected to retaliatory academic or employment action such as discharge, reassignment, demotion, suspension, harassment, or other discrimination.[3]

### B. Garl's Employment with the University

At all times relevant to his pending Charge, Garl was employed as the Head Men's Basketball Trainer. On or around March 18, 2025, Indiana University hired Darian DeVries as Head Coach of the University's men's basketball team. Coach DeVries was hired to replace outgoing Head Coach Mike Woodson, who stepped down at the conclusion of the 2024-25 men's basketball season.

During Coach Woodson's tenure, the University began to note several deficiencies in Garl's performance as Head Men's Basketball Trainer. Garl consistently and repeatedly failed to properly document his medical care, which is an extremely important function of his position. Additionally, Garl engaged in other concerning conduct within the program. Garl had a heated and inappropriate altercation with the Team's Orthopedic Surgeon in December 2022 concerning the treatment of players on the Team. In March 2023, Garl had issues with inviting and allowing unauthorized individuals into private Team areas. In January 2025, Garl refused to cooperate with the team's Sports Information Director during a game regarding information on a player injury. The Department's Chief Medical Officer met with Garl on these concerns, yet Garl was consistently unreceptive to feedback about his performance.

Given these issues and Garl's lack of receptiveness to change his behavior, the Department decided it was best to not renew Garl's employment contract, which was ending on June 30, 2025. Around this same time, there were several Department staff members who were associated with the men's basketball program who were also not renewed or retained as the program transitioned from Coach Woodson to Coach DeVries.

## II.    Statement of Position

---

[2] Trustees of Indiana University, *Non-Discrimination/Equal Opportunity/Affirmative Action Policy (UA-01)*, IND. U., https://policies.iu.edu/policies/ua-01-equal-opportunity-affirmative-action/index.html (last updated June 27, 2018).
[3] Trustees of Indiana University, *Discrimination, Harassment, and Sexual Misconduct (UA-03)*, IND. U., https://policies.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/index.html (last updated Aug. 14, 2020).

2

**INDIANA UNIVERSITY**
OFFICE OF THE VICE PRESIDENT
AND GENERAL COUNSEL

### A. Garl's Age Discrimination Claims Fails as a Matter of Law

To establish a *prima facie* case of age discrimination under the Age Discrimination in Employment Act (ADEA), Garl must show that: (i) he is protected under the ADEA; (ii) he performed his job to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (iv) one or more similarly situated individuals outside of his protected class received better treatment.[4] Where a complainaint is able to establish a *prima facie* case for discrimination, an employer may demonstrate that it took the actions complained of based on legitimate, non-discriminatory reasons.[5]

Garl's claims must fail as he cannot show that he was meeting his employer's legitimate performance expectations. To the contrary, the University had noted several deficiencies in Garl's performance prior to the decision not to renew his contract was made. Garl had been made aware of these issues and had not been receptive to the feedback from his employer. Additionally, Garl cannot show that he was treated differently than any similarly situated employee. To the contrary, Garl was treated the same as other Department staff members associated with the men's basketball program who were also not renewed or not retained at this same time. These other staff members were a wide variety of ages and included a 72-year old, a 36-year old, a 35-year old, a 53-year old, a 54-year old, a 48-year old and a 26-year old.

### B. Garl's Retaliation Claim Fails as a Matter of Law

An employer is prohibited from discriminating against an employee "because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [relevant law]."[6] To establish a claim of retaliation, Garl must present evidence showing: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the two.[7] A complainant may show sufficient causal nexus directly by the presentation of direct evidence, or alternatively via the use of circumstantial evidence.[8] Regardless of the method of proof, a complainant states a *prima facie* case of retaliation only when she has presented evidence that her engagement in protected activity was "a substantial or motivating factor" in any adverse employment action.[9]

Garl alleges in his complaint that his separation from Indiana University was "retaliation for his refusal to…to change a student athletes medical records."[10] The University is not certain which student Garl's allegations refer to, nor is it clear to the University what, if any, changes Garl was

---

[4] *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022).

[5] *Id.* at 434.

[6] 42 U.S.C. § 2000e-3(a); *see Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012).

[7] *Milligan*, 686 F.3d at 388.

[8] *Castro v. Devry University, Inc.*, 786 F.3d 559, 564 (7th Cir. 2015).

[9] *Milligan*, 686 F.3d at 388 (*citing Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011).

[10] *See* Charge of Discrimination, p. 2.

3



## INDIANA UNIVERSITY
OFFICE OF THE VICE PRESIDENT
AND GENERAL COUNSEL

asked to make to the student's medical record. Moreover, no representative of the University ever asked Garl to change or otherwise alter any student's medical records as he alleges in the complaint.

Garl's retaliation claim must fail because he cannot show that the University's decision to not renew his employment contract was motivated by his engagement in statutorily protected conduct. Instead as explained previously, all action taken by the University was for legitimate, nondiscriminatory reasons. Additionally, because of the lack of any causal nexus between Garl's alleged engagement in protected conduct and the non-renewal of his contract, Garl's claim of unlawful retaliation must fail as a matter of law.

## III.    Conclusion

For the reasons stated above, Garl's Charge based on age discrimination and retaliation has no merit. There is no factual or legal support for Garl's claims, so the University respectfully asks that this Charge be dismissed with a "no cause" finding. If you would like any further information to dispose of this charge, please let me know.

Sincerely,

*/s/Zachary R. Griffin*
Zachary R. Griffin
Assistant General Counsel
Indiana University

4